UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTISSA GAINES,

    Plaintiff,

    v.                                          Civil No. 06-1612-HA

NORDSTROM, INC.,                   OPINION AND ORDER

    Defendant.

HAGGERTY, Chief Judge:

    Defendant has moved for summary judgment [12] in this action for false imprisonment and assault. Oral argument on the motion was heard October 9, 2007. After considering the arguments and evidence before the court, defendant's motion is denied.

**I.    BACKGROUND**

    On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

1    - OPINION AND ORDER

A.     Facts

This dispute arises from a series of events on January 23, 2004, in the Nordstrom department store at 701 SW Broadway in Portland, Oregon. Artissa Gaines, a twenty-nine-year-old woman of African-American and American Indian heritage, entered the store at around 5:30 p.m. and went upstairs to use the restroom. She decided that she would try on some clothes. Gaines selected and put on some expensive designer clothes in the "Collectors" department, leaving her t-shirt and sweatshirt in the changing room. She moved on to another department on the same floor, where she continued to browse the merchandise. A clerk from the Collectors department, apparently nervous that valuable clothes were being worn by a customer "as their own" into another department of the floor, called Amber Powers, an in-store Nordstrom Loss Prevention Agent.

Powers and Thomas Udy, another Loss Prevention Agent, initially observed Gaines on closed-circuit television, and then left the observation room to watch her in person. Powers contacted at least one sales clerk on that floor and told them that Gaines was under surveillance by Loss Prevention and not to interact with her. See Williams Decl. ¶ 2.[1] Powers and Udy claim to have observed Gaines making "furtive eye movements" and that she selected clothing from racks without looking at the sizes. After Powers began watching her, Gaines continued browsing in the store, returning to the Collectors department. She entered a dressing room and emerged after about twenty minutes wearing a designer Missoni shirt and scarf with a retail cost of $2460. Gaines visited two other departments on the floor, selecting two dresses and a jacket. She

---

[1] Conversely, Powers claims to have instructed several sales associates to approach Gaines and ask to help her, and that those approaches were rebuffed. Powers Decl. ¶ 3. Gaines claims that she was never offered assistance. Gaines Aff. ¶ 4.

2      - OPINION AND ORDER

entered a dressing room in the "Individualist" department and spent another twenty minutes in a dressing room, emerging occasionally to look at herself in the mirror. Gaines left the dressing room wearing a dress and carrying her purse, and went to the "Via C" department, where she placed her purse on a store display while looking at herself in the mirror. Gaines returned to the Individualist department, where she re-entered the dressing room and emerged wearing the Missoni top and scarf.

Gaines asserts that she attempted to change back into her original clothes but could not find them in the dressing room. At this time she also realized that she had lost her purse. Gaines exited the dressing room and proceeded to a cashier's station to seek assistance. Both Powers and Udy were standing nearby as Gaines approached. Gaines approached Andra Williams, one of the two clerks at the station. Williams was assisting a customer at the time, and claims that Gaines aggressively interrupted her. According to Gaines, she approached Williams to tell her that her purse was missing and then moved behind the counter to help search. It was not there, and Williams told her that missing items would likely be at customer service. Gaines attempted to leave the area behind the counter.[2]

Powers stepped in front of Gaines, obstructing her path, and thrust a hand into Gaines's chest. Gaines did not raise her hands, and claims that Powers said nothing to identify herself before taking this action. Powers grasped Gaines by her left arm and attempted to grasp her right arm. Gaines pulled away from Powers and placed a magazine that she was carrying on the counter. Powers had her hands raised towards Gaines, continuing to block her egress from behind the counter. Gaines kicked at Powers, making minimal, if any, contact. Powers rushed at

---

[2] Defendant submitted, and the court has reviewed, a surveillance video showing Gaines approaching the counter, her interactions with Williams and the subsequent altercation.

Gaines, grappling with her, and Udy joined the fray. Gaines was subdued, handcuffed, and taken to a holding cell, where she was held handcuffed to a bench for approximately an hour before being handed over to the Portland Police.

B. **Procedural History**

On May 15, 2006, Gaines filed suit in federal court against Nordstrom, Powers, Udy, and the two Portland Police officers who picked her up from the store. She asserted state and federal civil rights claims, a state tort claim for intentional infliction of emotional distress (IIED), and state tort claims for false imprisonment and assault. Magistrate Judge Paul Papak issued, and Judge Anna Brown adopted, a Findings and Recommendation declining to exercise supplemental jurisdiction over the false imprisonment and assault claims and granting summary judgment on the remaining causes of action. *Gaines v. Nordstrom*, No. 05-CV-689-PK (D. Or. Sept. 19, 2006). Gaines filed suit for false imprisonment and assault in state court on October 13, 2006, and defendant removed. *See* 28 U.S.C. § 1441.

II. **ANALYSIS**

A. **Summary Judgment Standard**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As noted previously, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *Diebold, Inc.*, 369 U.S. at 655. Defendant, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When the non-moving party bears the burden of proving the

claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

### B. Discussion

Defendant argues that it should be granted summary judgment based on two theories of absolute immunity. First, defendant claims that there was probable cause to believe that Gaines had committed theft, and probable cause is an absolute defense to civil claims under Oregon Revised Statute (O.R.S.) § 131.655. Alternately, defendant argues that physical force used in the detention of Gaines was justified as part of a citizen's arrest under O.R.S. §§ 133.225, 161.255.

#### 1. Merchant Immunity

"[A] person may be detained in a reasonable manner and for a reasonable time by . . . [a] merchant or merchant's employee who has probable cause for believing that the person has committed theft of property of a store or other mercantile establishment." O.R.S. § 131.655. In such instances, the existence of "[p]robable cause is a defense to any civil or criminal action based on detention and interrogation." *Id.* In the seminal case addressing this merchant

5    - OPINION AND ORDER

immunity, both under statute and under the common law, the Oregon Supreme Court explained that "the pivotal question in most [such] cases . . . is that of probable cause." *Lukas v. J.C. Penny Co.*, 378 P.2d 717, 723 (Or. 1963) (en banc).

Here, defendant argues that plaintiff's behavior in the store created probable cause that she had committed theft. In the criminal context, probable cause "means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." O.R.S. § 131.005(11). "It is well settled that [in the analysis of merchant's exception claims] the presence or absence of probable cause is to be determined by the court as a matter of law and not by the jury as a question of fact." *Lukas*, 378 P.2d at 723 (quoting *Gibson v. J.C. Penny Co.*, 331 P.2d 1057, 1061 (Cal. Ct. App. 1958)). "From a constitutional perspective, two components comprise probable cause: '[a]n officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances.'" *State v. Pollock*, 102 P.3d 684, 686 (Or. 2004) (quoting *State v. Owens*, 729 P.2d 524, 529 (1986)) (footnote omitted). While the lack of state action here obviates any constitutional dimension to the inquiry, the court is guided by the constitutional law in its analysis.

The merchant's exception in O.R.S. § 131.655 allows merchants to take action when they have probable cause to believe that a theft has occurred. Under O.R.S. § 164.015(1), "[a] person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person . . . [t]akes, appropriates, obtains or withholds such property from an owner thereof . . . ." Oregon law provides further statutory definitions for "deprive" and "appropriate" in the context of this statute, and both require that the item be withheld "permanently or for so extended a period or under such circumstances that the major

portion of its economic value or benefit is lost to that person." O.R.S. § 164.005(1).

The initial stumbling block for defendant's theory of the case is the question of whether the merchant's exception can be read to apply to inchoate theft offenses. Defendant suggests in passing that "a shoplifter need not leave a store for theft or *attempted theft* to occur." Memo. at 8 (emphasis added). No further explanation or rationale for the inclusion of attempt within the ambit of the merchant's exception is given. As a matter of statutory interpretation, the plain language of O.R.S. § 131.655 speaks only to the crime of theft and not to attempt. The mere presence of criminal intent is insufficient to qualify as theft. There must be a genuine appropriation or withholding of the item from the possession of the owner before theft has occurred. Thus, for Powers and Udy to have probable cause to believe that Gaines had committed theft, they must have had a reasonable, good faith belief that she had criminal intent and had appropriated or withheld the shirt and scarf from Nordstrom.

Defendant claims that probable cause arose because Gaines allegedly wore the Missoni clothing "as her own," made furtive gestures, did not accept assistance from store personnel, concealed a price tag on a scarf, did not seem to look at the sizes of clothes before taking them from the racks, and because of her actions at the cashier's station. Most of these asserted facts are controverted by the Gaines Affidavit, making them an improper basis for summary judgment. Indeed, even defendant's affidavits in support are at times inconsistent. For example, Udy and Powers claim that Gaines was "randomly picking up items without looking at the sizes or prices." Udy Decl. ¶ 2; Powers Decl. ¶ 3. But, in her contemporaneous incident report, Powers states that Gaines tried on a number of items that she had taken into a dressing room – suggesting that the clothes Gaines selected were the correct size. Powers Decl. Ex. 3.

The facts on summary judgment tell the court that Gaines spent about an hour on the

7    - OPINION AND ORDER

same upstairs floor of Nordstrom, moving between departments, looking at merchandise, trying things on, and looking at herself in the mirror. She wore an expensive shirt and scarf combination for less than half of an hour, excluding time in dressing rooms. When she realized that she lost her purse, she sought help in finding it. Making all inferences in the light most favorable to Gaines, these facts do not support a finding of probable cause to believe that she ever took, appropriated, obtained, or withheld the clothes that she was wearing from Nordstrom. Indeed, even taking the view of the facts presented by defendant as true, the record does not support a finding of probable cause for theft. The suspicious behaviors ascribed to Gaines by Powers and Udy are potentially probative of criminal intent. But, as discussed above, there must be objectively reasonable indicia that Gaines actually engaged in the *actus reus* of theft, *i.e.*, that she took, appropriated, obtained or withheld the clothes from Nordstrom. *Cf. Delp v. Zapp's Drug & Variety Stores*, 395 P.2d 137, 138 (Or. 1964) (plaintiff had paid at cashier but had not yet left store with unpaid item when stopped by store detective). It is difficult to envision any set of circumstances where probable cause could arise to suspect an individual of theft when they are openly wearing store-owned clothes and not attempting to leave the store.

    2.    **Citizen's Arrest**

"A private person may arrest another person for any crime committed in the presence of the private person if the private person has probable cause to believe the arrested person committed the crime." ORS § 133.225. Defendant claims that Powers was authorized under this statute to apprehend Gaines either for shoplifting or for assault. For the reasons stated above, there was no probable cause to support a citizen's arrest for theft. It is clear from the video, as Judges Papak and Brown also concluded, that Powers initiated the physical altercation with Gaines. Oregon law recognizes a right to use physical force to defend oneself. O.R.S. §

161.209. The facts on summary judgment support a conclusion that any use of force by Gaines was in response to aggression by Powers, and as such could not reasonably form the basis for probable cause to support a citizen's arrest.

## III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [12] is DENIED.

IT IS SO ORDERED.

DATED this __9__ day of October, 2007.

                                                  /s/ Ancer L. Haggerty
                                                 Ancer L. Haggerty
                                          United States District Judge